IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MONTANA
BILLINGS DIVISION

| | |
|---|---|
| JANET AMUNRUD, KALFELL RANCH, INC., and FLYNN RANCH OF TOWNSEND, INC. for themselves and all others similarly situated,<br><br>Plaintiffs,<br><br>v.<br><br>SPRINT COMMUNICATIONS COMPANY L.P.,<br>Defendant. | CV 10-57-BLG-CSO |

**FINDINGS OF FACT AND CONCLUSIONS OF LAW ON PLAINTIFFS' MOTION FOR AWARD OF ATTORNEY'S FEES AND EXPENSES TO SETTLEMENT CLASS COUNSEL AND INCENTIVE COMPENSATION TO CLASS REPRESENTATIVES**

Under Federal Rules of Civil Procedure 23(h)(1) and 54(d)(2), Plaintiffs in this class action have moved for an award of attorney's fees and expenses to Settlement Class Counsel. Under Rule 23(h)(3), the Court must make findings of fact and state its conclusions of law. The Court does so, as follows, in granting the motion:

**Findings of Fact**

1. This class-action settlement resolves a property-rights dispute, which arises out of the installation of fiber-optic cable on railroad rights of way by Sprint Communications Company L.P. ("Sprint"). The claims resolved by the Settlement

affect parcels of land in Montana covering 750 miles of rights of way throughout the state.

2. On May 26, 2010, the original Plaintiff, Janet Amunrud, filed her Complaint in this case. On September 20, 2010, following briefing on the question of subject-matter jurisdiction raised by the Court in an order dated September 1, 2010, Plaintiff filed an Amended Complaint. Sprint answered the Amended Complaint on October 13, 2010. The parties commenced discovery. On December 9, 2010, the parties filed a joint motion to stay the proceedings, pending implementation of this settlement. On December 31, 2010, the Court granted the motion to stay — for a period of two months. On February 14, 2011, the Court lifted the stay. On May 17, 2011, with leave of Court, a Second Amended Complaint was filed, adding Kalfell Ranch, Inc. as a party. Sprint answered on June 6, 2011.[1]

3. On September 20, 2011, the Court entered an order preliminarily approving the settlement, certifying the settlement class, and approving the form and manner of notice. On February 3, 2012, the Court held a final Fairness Hearing.

---

[1] A related case, raising the same allegations against Sprint, was filed on May 12, 2011, *Flynn Ranch of Townsend, Inc. v. Sprint Commc'ns Co., L.P.*, Case 1:11-cv-00047-RFC. A motion to consolidate *Flynn Ranch* with this case was granted on July 26, 2011. Under the settlement, in which Flynn Ranch joins, it is a class representative and its claims are resolved and the case is dismissed.

4. The Settlement Agreement provides in pertinent part: "Settlement Class Counsel may seek from the Court a cash award of fees and expenses from Sprint, in an amount not to exceed the Maximum Attorneys' Fee Award, to which Sprint will not object." Settlement Agreement § II.E.1. The Settlement Agreement defines the Maximum Attorneys' Fee Award as $270,000. Settlement Agreement Definitions. The Settlement Agreement further provides that "the Settling Defendants shall deposit any attorneys' fee award approved by the Court, which shall not exceed the Maximum Attorneys' Fee Award, into the interest-bearing escrow account established with U.S. Bank in New York, New York, no later than ten (10) days after the date on which the Order and Judgment becomes Final." Settlement Agreement § II.E.2. The escrow account established with U.S. Bank is a Qualified Settlement Fund within the meaning of Treasury Regulation § 1.468B.

5. All but two of Settlement Class Counsel and certain Plaintiffs' Counsel in Other Pending Cases, *see* Settlement Agreement Definitions, have entered into an agreement to mediate, and if necessary, arbitrate the division of the fee-and-expense award. Under the mediation-arbitration agreement, the participants in the mediation-arbitration, or the arbitrators, shall inform the Court of the final fee-and-expense allocation, and the participants in the mediation-arbitration will jointly move the Court to adopt it.

6. Settlement Class Counsel estimate that a minimum of $780,000 in cash benefits are available for class members to claim. Administrative costs — to be paid separately by Sprint — in creating and updating a sophisticated database to notify class members, implement the Settlement, and process claims, are estimated at an additional $530,000. The agreed-to attorney's fees and non-taxable costs of approximately $270,000 — which will not reduce benefits payable to class members — bring the total gross value of the Settlement to roughly $1,580,000.

7. Beginning on October 19, 2011, the claims administrator mailed notices to 4,397 current and prior property owners along railroad rights of way in Montana containing telecommunications facilities installed by Sprint, and opened a settlement call center and website. The notice, which was posted on the website, advised in pertinent part:

> The Court will decide how much Class Counsel and any other lawyers will be paid. Class Counsel will ask the Court for attorneys' fees, costs and expenses of $270,000. . . . Sprint will separately pay these fees and expenses and the payment will not reduce the benefits available for the Class.

Notice at 9. The Notice further advised that the Court would hold a Fairness Hearing on February 3, 2012, at which time the Court would "consider how much to pay Class Counsel." *Id*. at 10.

8. Following publication of the class notice, no class members objected to the proposed award of attorneys' fees and expenses. (*See* Declaration of Robert V. Mitchell of Rust Consulting, Inc., ¶ 13.)

## Conclusions of Law

9. In awarding attorney's fees, the Court "has discretion to use either a percentage or lodestar method." *Hanlon v. Chrysler Corp.*, 150 F.3d 1011, 1029 (9th Cir. 1998) (citation omitted). "The percentage-of-recovery method is favored in common-fund cases because it allows courts to award fees from the fund in a manner that rewards counsel for success and penalizes it for failure." *Alberto v. GMRI, Inc.*, 2:2007cv01895, 2008 WL 489120, at *11 (E.D. Cal. Nov. 12, 2008) (internal quotation marks and citation omitted). Under that approach, it is appropriate to base the percentage on the gross cash benefits available for class members to claim, plus the additional benefits conferred on the class by Sprint's separate payment of attorney's fees and expenses, and the expenses of administration. *See Boeing v. Gemert*, 444 U.S. 472, 479 (1980) ("Although the full value of the benefit to each absentee member cannot be determined until he presents his claim, a fee awarded against the entire judgment fund will shift the costs of litigation to each absentee in the exact proportion that the value of his claim bears to the total recovery."); *Williams v. MGM-Pathe Commc'ns Co.*, 129 F.3d 1027 (9th Cir. 1997) ("In *Boeing* . . ., the Court concluded that the attorneys

for a successful class may recover a fee based on the entire common fund created for the class, even if some class members make no claims against the fund so that money remains in it that otherwise would be returned to the defendants. In *Six (6) Mexican Workers v. Arizona Citrus Growers*, 904 F.2d 1301, 1311 (9th Cir. 1990), we held likewise . . . .").

10. Additionally, under *In Re Bluetooth Headset Prods. Liab. Litig.*, 654 F.3d 935 (9th Cir. 2011), settlement agreements like this one, negotiated before class certification, "must withstand an even higher level of scrutiny for evidence of collusion or other conflicts of interest than is ordinarily required under Rule 23(e) before securing the court's approval as fair." *Id*. at 946 (citations omitted). In particular, in that circumstance, courts must be on the lookout for three signs of possible collusion between the plaintiffs and defendants: "(1) when counsel receive of a disproportionate distribution of the settlement, or when the class receives no monetary distribution but counsel are amply rewarded; (2) when the parties negotiate a 'clear sailing' arrangement providing for the payment of attorneys' fees separate and apart from class funds, which carries the potential of enabling a defendant to pay class counsel excessive fees and costs in exchange for counsel accepting an unfair settlement on behalf of the class; and (3) when the parties arrange for the fees to revert to defendants rather than be added to the class fund." *Id*. at 947 (internal quotation marks and citations omitted).

11. The Court adopts the percentage-of-the-fund approach, and finds that, under it, the agreed-to attorney's-fee request is reasonable as a matter of law. Here, Settlement Class Counsel estimate that, based on the miles of rights of way covered by the Settlement, if each class member were to claim the available cash benefits, approximately $780,000 would be paid to qualifying class members. When the estimated administrative costs of $530,000 — to be borne by Sprint — and the agreed-to attorneys' fees and expenses of $270,000 — also to be paid separately by Sprint — are factored in, the gross value of the Settlements is approximately $1,580,000.

12. The $270,000 fee-and-expense award therefore represents 17 percent of the fund as a whole. A 17-percent fee-and-expense award is well within the range of reasonable percentage-fee awards in this Circuit. *See, e.g.*, *Fischel v. Equitable Life Assur. Soc'y of the U.S.*, 307 F.3d 997, 1006 (9th Cir. 2002) ("We have established a 25 percent 'benchmark' in percentage-of-the-fund cases that can be adjusted upward or downward to account for any unusual circumstances involved in [the] case.") (internal quotation marks and citation omitted); *see also In re Pac. Enters. Sec. Litig.*, 47 F.3d 373, 379 (9th Cir. 1995) ("[t]wenty-five percent is the 'benchmark' that district courts should award in common fund cases").

13. The 17-percent fee-and-expense award is reasonable here, where, in reaching the Settlement Agreement, Settlement Class Counsel engaged in lengthy

and hard-fought litigation, and lengthy and hard-bargained negotiations under the auspices of a nationally recognized mediator.

14. The Court is satisfied that none of the possible signs of collusion identified in *Bluetooth* is present here. The settlement was negotiated at arm's length under the auspices of a nationally recognized mediator. *See Bluetooth*, 654 F.3d at 948 ("presence of a neutral mediator . . . [is] a factor weighing in favor of finding non-collusiveness"). The "clear sailing" provision here only provides for smooth seas up to a 17-percent benchmark. That is not an excessive fee in exchange for an unfair settlement, which a clear sailing provision can sometimes suggest. *See id.* (remarking that scrutiny of clear sailing provision is necessary "to avoid awarding 'unreasonably high' fees simply because they are uncontested.") (quoting *Staton v. Boeing Co.*, 327 F.3d 938, 954 (9th Cir. 2003)). As far as the fairness of the settlement goes, its terms provide real and meaningful cash compensation to class members for Sprint's installation of fiber-optic cable on their property.

15. For the same reasons that the clear-sailing provision is no evidence of collusion, the reverter provision — i.e., that, if the Court awards less than $270,000 in fees, the difference between the award and $270,000 does not go to the class, but is simply unpaid by Sprint — also is no evidence of collusion. As the *Bluetooth* court explained: "If the defendant is willing to pay a certain sum in

attorneys' fees as part of the settlement package, *but the full fee award would be unreasonable*, there is no apparent reason the class should not benefit from the excess allotted for fees." *Id*. at 949 (emphasis added). Here, the full fee award is *not* unreasonable; it is below the 25-percent benchmark for a reasonable fee. There can be no "excess allotted for fees" because the full $270,000 attorneys' fee award is reasonable. Accordingly, the collusion concerns that a reverter provision *may* raise are not present here.

16. Furthermore, there were no objections to the proposed fee-and-expense award. "The existence or absence of objectors to the requested attorneys' fee is a factor is determining the appropriate fee award." *In re Heritage Bond Litig.*, No. 02-ML-1475, 2005 WL 1594403, at *21 (C.D. Cal. June 10, 2005). Here, the Court-approved notice stated that, at the conclusion of the fairness hearing, counsel would seek a fee-and-expense award up to $270,000. The notice also informed class members of their ability to object to the fee request. No class members objected to it, and no class members appeared at the Fairness Hearing to object to it. "The absence of objections or disapproval by class members to Class Counsel's fee request further supports finding the fee request reasonable." *Id*.

**WHEREFORE** it is **ORDERED** that the motion for an award of attorney's fees and expenses to Settlement Class Counsel is **GRANTED**.

It is further **ORDERED** that the Court approves a fee-and-expense award of $270,000 to Settlement Class Counsel,

It is further **ORDERED** that Sprint shall deposit the fee-and-expense award approved by the Court into the interest-bearing escrow account — established as a Qualified Settlement Fund within the meaning of Treasury Regulation § 1.468B and as a trust under state law — with U.S. Bank in New York, New York, no later than ten (10) days after the date on which the Order and Judgment becomes Final, that any alleged or actual civil liability against Sprint for attorneys' fees arising out of the tort claims resolved by the Montana Class Settlement Agreement approved by this Court is satisfied and extinguished through Sprint's payment of the fee-and-expense award, and that any interest earned on the escrow account shall be recognized as gross income of the Qualified Settlement Fund;

It is further **ORDERED** that appointment of the Garretson Firm Resolution Group, Inc. ("GFRG") as the Fund Administrator for the escrow account is hereby confirmed and that the escrow account shall be governed by the Escrow Agreement entered into as of August 26, 2011 between Settlement Class Counsel, U.S. Bank, and GFRG, and

It is further **ORDERED** that the escrow agent for the aforementioned escrow account shall distribute the fee-and-expense award to counsel only pursuant

to written direction by GFRG following its receipt of an order of this Court, upon

motion to adopt the allocation reached in the mediation-arbitration.

Date: February 10, 2012          /S/ Carolyn S. Ostby
                                 United States Magistrate Judge